# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMES WARNER, II, GARNET WARNER, and JAMES WARNER, III, <br><br> Plaintiffs, <br><br> v. <br><br> ST. JOHN'S NORTHWESTERN MILITARY ACADEMY INC., ALEX FORSTROM, JOHN FORSTROM, and ABC INSURANCE COMPANY, <br><br> Defendants. | Case No. 18-CV-730-JPS <br><br><br> **ORDER** |

1.    **INTRODUCTION**

This case involves allegations of sexual assault involving two adolescent boys attending a summer camp at St. John's Northwestern Military Academy ("St. John's") in Delafield, Wisconsin. The plaintiffs are James Warner, III ("Warner") and his parents, James Warner II and Garnet Warner (collectively, "Warner's parents"). They allege that defendant Alex Forstrom ("Forstrom") sexually assaulted Warner in the summer of 2012 in a dorm room at St. John's while both were cadets at the school's summer camp. At the time of the alleged assault, Warner was twelve years old and Forstrom was fifteen.

Warner brings a federal claim against St. John's under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and state law claims for negligence and false imprisonment. He also brings state law claims against Forstrom for battery, assault, and intentional infliction of emotional distress, and against Forstrom's father, John Forstom, for

negligence. Warner's parents bring state law claims against St. John's for fraudulent and negligent misrepresentation.

St. John's moved to dismiss the claims brought against it pursuant to the doctrine of *forum non conveniens,* arguing that the forum-selection clause in the Enrollment Agreement governing Warner's attendance at the camp mandates that the claims in this case be litigated in the circuit court of Waukesha County, Wisconsin. (Docket #19). Forstom and his father moved to dismiss Warner's claims against them for lack of subject matter jurisdiction. (Docket #24).[1] Both motions are now fully briefed and ripe for adjudication.

For the reasons explained below, St. John's motion to dismiss for *forum non conveniens* will be granted, meaning that all claims against St. John's, including the only federal claim in this case, will be dismissed. In light of that dismissal, the Court will grant the Forstroms' motion to dismiss to the extent it implores the Court to decline to exercise its supplemental jurisdiction over the remaining claims against them, all of which arise under Wisconsin law. The entire action, then, will be dismissed without

---

[1]The Forstroms' motion to dismiss is based on a lack of diversity under 28 U.S.C. § 1332. (Docket #24). They argue that the state law claims against them cannot be supported by diversity jurisdiction, as alleged in the complaint, because at the time this lawsuit was filed, the plaintiffs and the Forstrom defendants were all citizens of Florida. *Id*. In response, the plaintiffs concede that diversity is lacking, but ask that the Court exercise supplemental jurisdiction over the plaintiffs' state law claims under 28 U.S.C. § 1367 because all of the claims in this case arose from the same nucleus of operative fact. (Docket #27). In their reply, the Forstroms argue that supplemental jurisdiction is not proper, but even if it were, the Court should decline to exercise supplemental jurisdiction over the state law claims pending against them if the Court grants St. John's motion and dismisses the only federal claim in this case. (Docket #29 at 8).

prejudice, leaving the plaintiffs free to re-file the case in Waukesha County if they so desire.²

## 2. BACKGROUND

St. John's is an all-male boarding school in Delafield, Wisconsin. Every summer, St. John's operates a five-week summer camp for boys entering seventh through twelfth grades.

In June 2012, James and Garnet Warner decided to enroll their son James in summer camp at St. John's. Warner's parents entered into an Enrollment Agreement with St. John's (the "Enrollment Agreement") that contained, among other provisions, a waiver of certain claims that Warner or his parents might accrue stemming from Warner's time at St. John's, a choice-of-law provision selecting Wisconsin law, and a forum-selection clause selecting the circuit court of Waukesha County, Wisconsin for resolution of any litigation arising from the agreement or Warner's enrollment at St. John's. (Docket #21 at 2).³ The forum-selection clause is the only provision of the agreement that appears in all capital letters, and it reads, in full, as follows:

> ANY LITIGATION ARISING OUT OF THIS CONTRACT AND/OR THE ENROLLMENT OF MY (OUR) SON/WARD AT THE ACADEMY, INCLUDING ANY PERSONAL INJURY OR OTHER TORT ACTION, SHALL BE SUBJECT TO THE EXCLUSIVE JURISDICTION AND VENUE IN THE CIRCUIT COURT FOR WAUKESHA COUNTY, WISCONSIN.

*Id.*

---

²In light of the Court's dismissal of this action, the plaintiffs' motion to compel discovery responses, (Docket #32), will be denied as moot.

³The Court may look to facts outside the complaint in determining whether to enforce a forum-selection clause. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016).

The Enrollment Agreement is signed by both of Warner's parents, but not Warner himself. *Id.*

As to his substantive claims, Warner alleges that on the night of July 30, 2012, Forstrom, who shared a room with Warner despite a school policy that disfavored rooming cadets of different ages together, confronted Warner and asked him if he "know what a rapist was." (Docket #1 at 8). Warner responded that he didn't and Forstrom "violently threw [Warner] against a dorm room wall and whispered into his ear 'this is what robbers and rapists do.'" *Id.* Forstrom then pushed Warner onto a bed in the room and sexually assaulted him. *Id.* A campus security officer conducting a regularly-scheduled bed check saw the assault in progress and stepped in, demanding an explanation. Forstrom claimed he was teaching Warner "pressure points." *Id.*

On May 10, 2018, some six years later, Warner and his parents filed this lawsuit.

3. **ANALYSIS**

The doctrine of *forum non conveniens* permits a court, in its discretion, to dismiss an action over which it has proper jurisdiction when there is an adequate alternative forum in which the case may be more conveniently heard. *Kamel v. Hill–Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). A *forum non conveniens* analysis typically requires the court to evaluate and weigh the private interests of the litigants and the public interests of the forum to determine whether litigating the case in the alternative forum would serve the convenience of parties and witnesses and otherwise promote the interests of justice. *See id.*; *see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013).

The *forum non conveniens* analysis changes, however, when the parties' contract contains a valid forum-selection clause, because the clause represents the parties' agreement as to the proper forum and thus its enforcement "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co.*, 571 U.S. at 63 (quotation omitted). Importantly, under those circumstances, the plaintiff's choice of forum merits no weight. Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Further, the court must not consider arguments about the parties' private interests, and instead must deem those interests to weigh entirely in favor of the preselected forum. *Id.* at 64. Therefore, the court may only consider arguments about the public interest, which may include factors such as the administrative difficulties flowing from court congestion, local interest in having localized controversies decided at home, and the interest in having a trial in a forum that is at home with the law. *Id.* at 62 n.6. And because public interest factors will "rarely defeat" a *forum non conveniens* motion, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

Warner raises three objections to the presumption that the forum-selection clause controls the location of this suit (only one of which arguably touches on public interest factors): (1) the clause cannot bind Warner, a non-signatory to the Enrollment Agreement, so his claims must remain here; (2) the forum-selection clause is ambiguous and should therefore be construed against St. John's; and (3) the Enrollment Agreement is void under Wisconsin law because it violates public policy and therefore its forum-selection clause is unenforceable. Each argument will be addressed in turn,

after the Court addresses the threshold question of which law to apply for its analysis.

### 3.1 Choice of Law

Before turning to the parties' arguments regarding the Enrollment Agreement's forum-selection clause, the Court must first determine what law governs the question of the clause's enforcement. Warner says it must be Wisconsin law, because the Enrollment Agreement contains a Wisconsin choice-of-law provision. *See* (Docket #21 at 2). In support of his position, Warner cites *Jackson v. Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014), which holds that a district court sitting in diversity jurisdiction should use the law that governs the rest of the contract to determine the validity of the contract's forum-selection clause. St. John's does not specifically address choice-of-law but relies primarily on federal law in its briefing.

Warner does not explain why *Jackson* would apply to a non-diversity case such as this one, especially in light of *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993), a federal-question jurisdiction case in which the Seventh Circuit applied federal law to determine the validity of the forum-selection clause in the contract, even though the contract also contained a choice-of-law provision. *See Jackson*, 764 F.3d at 776 (acknowledging that the *Bonny* court applied federal law for determining the validity of a forum-selection clause).

Moreover, the reason behind the *Jackson* court's decision to use the law designated by the contract's choice-of-law provision (instead of federal common law) does not necessarily apply here. The *Jackson* court observed that in a diversity case, wherein the court applies state law to determine substantive issues, the simplest way to resolve the procedural issue of enforceability of a forum-selection clause is by applying the law of the

jurisdiction whose rules will govern the rest of the dispute. This approach avoids "'making the court apply two different bodies of law in the same case.'" *Id.* at 775 (quoting *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421 (7th Cir. 2007)). In a diversity case, that will result in the court using the substantive law of the state in which the district court sits, or the law designated by the relevant contract. But in a federal question case, the substantive law that governs the resolution of the federal claim is federal law. Therefore, in a federal question case like this one, using the law designated by the contract—Wisconsin law—to determine the enforceability of the forum-selection clause would result in exactly what the Seventh Circuit sought to avoid in *Jackson*: application of one jurisdiction's law to substantive issues and another jurisdiction's law to procedural issues in the same case.

Under federal law, a forum-selection clause is presumed to be valid, and to overcome this presumption, the opposing party must show that the clause is "unreasonable under the circumstances." *Bonny*, 3 F.3d at 160. Courts construe this exception narrowly. *Id.* A clause is unreasonable under the circumstances if its incorporation into a contract was the result of fraud, undue influence, or overwhelming bargaining power, if the selected forum is so gravely inconvenient that the opposing party will be deprived of its day in court, or if enforcement of the clause contravenes a strong public policy of the forum. *Id.*

Forum-selection clauses are also presumptively valid in Wisconsin, but the analysis Wisconsin courts use to determine if the presumption is rebutted is slightly different. In Wisconsin, a contract's forum-selection clause will be enforced unless "there is a quantum of procedural unconscionability plus a quantum of substantive unconscionability."

*Pietroske, Inc. v. Globalcom, Inc.*, 685 N.W.2d 884, 886 (Wis. Ct. App. 2004). The *Pietroske* court further explained this analysis:

> Procedural unconscionability relates to factors bearing on the meeting of the minds of the contracting parties; substantive unconscionability pertains to the reasonableness of the contract terms themselves. The balance tips in favor of unconscionability when there is a certain quantum of procedural plus a certain quantum of substantive unconscionability. The balancing of procedural and substantive unconscionability requires courts to consider each questionable forum-selection clause on a case-by-case basis and precludes the development of a bright-line rule.

*Pietroske*, 685 N.W.2d at 887 (internal quotation omitted).

The Warners, whose burden it is to overcome the presumption that the forum-selection clause is valid and enforceable, do not couch their arguments in terms of the tests outlined above. Instead, their arguments generally center on contract construction principles under Wisconsin law.

Ultimately, the distinction between the jurisdictions' laws on this issue is without a difference, because the forum-selection clause is enforceable under either federal common law or Wisconsin law. The plaintiffs have not shown that the clause is unreasonable or unconscionable, and their arguments addressing construction of the contract terms are not sufficient to overcome the presumption that the parties intended to select Waukesha County Circuit Court as the exclusive venue for this litigation.

### 3.2 The Forum Selection Clause is Enforceable Against Warner

Warner first argues that his Title IX claim against St. John's is not subject to the Enrollment Agreement's forum-selection clause because he is not a party to the Enrollment Agreement. Warner's parents and St. John's are signatories to the agreement, but Warner himself did not sign it.

Federal common law provides that in order "to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (quotation omitted). A third-party beneficiary of a contract "would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, . . . [but] third-party beneficiary status is not required" to bind a non-party. *Id.* at 210 n.7. An intended third-party beneficiary "is one who, although not a party to the contract, is intended by the contracting parties to benefit from the contract." *United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 930 (7th Cir. 2003).

Warner is undoubtedly "closely related" to the Enrollment Agreement and the dispute that has arisen from it; indeed, he is the subject of the Enrollment Agreement and its intended beneficiary. There would be no purpose for the Enrollment Agreement without him. The agreement expressly states the Warner parents' "permission" that Warner "attend St. John's Northwestern Academic Program." (Docket #21 at 2). The parents "agree[d] to bind" their son to St. John's rules, regulations, and policies. *Id.* The parents agreed that they understood that Warner's "development at the Academy is dependent on a number of factors, including primarily his acceptance of and commitment to the Academy's academic curriculum and military structure and discipline." *Id.* Moreover, the claims in this case would not have arisen but for Warner's enrollment at St. John's. Therefore, it is indisputable that Warner is so closely related to the Enrollment Agreement that it was foreseeable that he would be bound by it.

This analysis is consistent with decisions from other federal district courts faced with questions about the enforcement of forum-selection clauses in cases involving claims by children whose parents executed the

contract containing the clause. *See, e.g., Dillon v. Ski Shawnee, Inc.*, No. CIV.A. 13-7155 JAP, 2014 WL 3900877, at *2 (D.N.J. Aug. 11, 2014) (parent can bind a minor child to a forum-selection clause contained in the terms associated with a ski lift ticket that the parent purchased for the child); *Vega–Perez v. Carnival Cruise Lines,* 361 F. Supp. 2d 1 (D.P.R. 2005) (enforcing forum-selection clause contained in cruise ship passage contract executed by minor's mother); *cf. Burns v. Wilderness Ventures, Inc.*, No. 12 C 4188, 2012 WL 3779069, at *3 (N.D. Ill. Aug. 30, 2012) (enforcing forum-selection clause in camp contract signed by camper, who died at the camp, and her mother, in an action brought by the camper's father, who did not sign the contract).

The result is the same under Wisconsin law. Although the parties did not cite, and the Court has not independently located, any Wisconsin cases dealing with the enforcement of a forum-selection clause against a non-party (or, more specifically, a non-party child of the signatories), Wisconsin's case law regarding related issues of contract provides a helpful roadmap. Under Wisconsin law, a minor does not have legal capacity to contract. *Withers v. Tucker*, 145 N.W.2d 665, 667 (Wis. 1966). In light of this, Wisconsin courts have recognized that parents may bind their children to a contract when, for example, the contract is executed on the child's behalf. *See Fire Ins. Exch. v. Cincinnati Ins. Co.*, 610 N.W.2d 98, 102, 107 (Wis. Ct. App. 2000) (In the context of a release signed by a parent on behalf of her child "in exchange for the opportunity for [the child] to participate in [a] volunteer program," the court acknowledged that "there may be occasions where a parent can waive the claim of a child[.]"). Importantly, the *Fire Insurance Exchange* court assumed that a parent's signature on a contract regarding her son was sufficient to bind her son; the only question was

whether a parent could sign an *exculpatory* contract on behalf of her son to waive his rights on his behalf. *Id.* at 107–08.

Further, Wisconsin law also recognizes that non-parties to a contract may enforce the contract if it was made specifically for his or her benefit. *Goossen v. Estate of Standaert*, 525 N.W.2d 314, 319 (Wis. Ct. App. 1994). As explained above, the clear and unambiguous terms of the Enrollment Agreement demonstrate that Warner was its intended beneficiary. The principle of mutuality demands that because Warner can enforce the provisions of the agreement, including the forum-selection clause, against St. John's, St. John's can enforce the clause against him. *See United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1054 (N.D. Ill. 2015) ("Mutuality is the principle that if a signatory can enforce the forum selection clause against a non-signatory, then the non-signatory should be allowed to do the same."). Although published Wisconsin cases are, in this Court's research, bereft of consideration of the mutuality principle as applied to forum-selection questions, this Court is confident that Wisconsin courts would apply this doctrine of contract if confronted with the question.

### 3.2 The Forum-Selection Clause is Not Ambiguous

Plaintiffs next argue that the forum-selection clause is ambiguous because it does not state whether it applies to claims brought by Warner, or claims brought by Warner's parents, or both. This ambiguity, the plaintiffs say, must be construed against the drafter, St. John's.

This argument is meritless. The forum-selection clause in the Enrollment Agreement unambiguously applies to "*any* litigation arising out of this contract and/or the enrollment of my (our) son/ward at the Academy, including any personal injury or other tort action[.]" (Docket #21 at 2) (italics supplied). The parties certainly contemplated that Warner

might have his own claims against St. John's, distinct from his parents' potential claims; for example, the parties included language waiving any claims that the parents *or Warner* may have against St. John's resulting from the use of motor vehicles or watercraft for transportation purposes. *Id.* Having contemplated the possibility that Warner or his parents might assert claims related to Warner's enrollment, the parties could have limited the scope of the forum-selection clause to certain persons' claims, if they so intended. They did not.

The cases from other districts to which Warner cites do not suggest a different result. *See Nkemakolam v. St. John's Military Sch.*, 876 F. Supp. 2d 1240 (D. Kan. 2012); *Bizilj v. St. John's Military Sch.*, No. 08-CV-2036-CM, 2008 WL 4394713 (D. Kan. Sept. 24, 2008). Both of those cases involved claims brought by students of a military school in Kansas (also called St. John's, coincidentally) or parents of students. The forum-selection clause in the enrollment agreement at that school, signed by the parents and not the students, specifically limited application of the clause to the school and the signatory parents. *Nkemakolam*, 876 F. Supp. 2d at 1243 ("Any disagreements, disputes, or potential causes of action of any kind between St. John's Military School and the Parent/Guardian shall be submitted to final and binding arbitration to be conducted according to the then-applicable rules of the American Arbitration Association. Venue for the arbitration shall be in Salina, Kansas."); *Bizilj*, 2008 WL 4394713, at *1 (same).

The forum-selection clause in this case is not limited to disputes between parents and the school. It expressly applies to any litigation stemming from Warner's enrollment at St. John's. All of the plaintiffs' claims in this case, including Warner's, undoubtedly relate to Warner's

enrollment at St. John's and are therefore subject to the forum-selection clause.

### 3.3 Allegedly Exculpatory Provisions of the Enrollment Agreement Do Not Void the Forum-Selection Clause

Finally, the plaintiffs argue that the entire Enrollment Agreement is void under Wisconsin law because it contains exculpatory provisions which seek to broadly release St. John's from liability for torts. They contend that these provisions make the Enrollment Agreement an exculpatory contract that is void under Wisconsin law. *See Yauger v. Skiing Enters., Inc.*, 557 N.W.2d 60, 62 (Wis. 1996) ("Exculpatory contracts are not favored by the law because they tend to allow conduct below the acceptable standard of care."). Because the whole agreement is void, they argue, the forum-selection clause cannot be enforced.

This Court need not decide whether the Enrollment Agreement is an exculpatory contract because resolution of that question does not affect the forum-selection analysis. The Seventh Circuit has described this procedural issue succinctly:

> Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable as against public policy—*i.e.*, they set out a pyramid scheme—the forum selection clauses are also void. The logical conclusion of the argument would be that the [federal district court] would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all. An absurdity would arise if the [federal district court] determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to [the designated state court]—for what? A determination as to whether the contracts are void?

*Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006). Therefore, "the general rule is that forum selection clauses are enforceable unless obtained by fraud, even when the underlying contracts in which they are contained are void." *Stifel v. Lac Du Flambeau Band of Lake Superior Chippewa Indians*, No. 13-CV-372-WMC, 2014 WL 12489707, at *22 n.21 (W.D. Wis. May 16, 2014). Even if the plaintiffs are right that the Enrollment Agreement is a void exculpatory contract, this Court's forum selection analysis stands.

Moreover, even if the Court were to turn to Wisconsin law to address this argument, another doctrine of Wisconsin contractual law would apply to defeat the plaintiffs' argument. That is, Wisconsin courts will strike void provisions of a contract and enforce the remaining, valid, provisions if the contract is divisible. *Star Direct, Inc. v. Dal Pra*, 767 N.W.2d 898, 902 (Wis. 2009) (Unenforceable provisions of a contract can be struck, and the remaining provisions of the contract can be enforced, if the remaining provisions are "divisible" and "enforceable on their own terms").

Here, the forum-selection clause is clearly divisible from the Enrollment Agreement's waiver provisions. The allegedly exculpatory provisions are (1) the introductory paragraph which states that Warner's parents "knowingly assume all risks associated with activities" and (2) the paragraph addressing transportation, which states that Warner and his parents "release, waive, and relinquish any claims" that they may have against St. John's resulting from "the use of motor vehicles or watercraft for transportation purposes." (Docket #21 at 2). The forum-selection clause is an entirely separate paragraph at the end of the agreement that does not rely on, reference, or relate to the waiver provisions. Moreover, the agreement contains a severability provision, stating that "[t]he provisions

of this Contract are severable, and the unenforceability of one or more of its provisions shall not affect the remaining provisions hereof." *Id.*

For all of these reasons, the allegedly exculpatory provisions of the Enrollment Agreement are not grounds for declining to enforce the agreement's forum-selection clause.

5.   **CONCLUSION**

The Warners have not provided a sufficient reason to overcome the presumption that the forum-selection clause in the Enrollment Agreement is valid and enforceable as to the claims brought in this action. Therefore, the Court will grant St. John's motion to dismiss for *forum non conveniens* and dismiss the complaint as to St. John's without prejudice.

Next, the Court finds the best exercise of judicial discretion is to decline to exercise supplemental jurisdiction over the remaining state law claims against the Forstrom defendants. 28 U.S.C. § 1367(c)(3). As the plaintiffs concede, all of the claims in this case arise from the same set of operative facts. They should be tried together. Further, all but one claim arises under Wisconsin law, and therefore the Wisconsin court preselected by the parties as the proper forum for this case is well-equipped to decide the legal issues these claims entail.

Accordingly,

**IT IS ORDERED** that St. John's Northwestern Military Academy Inc.'s motion to dismiss (Docket #19) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Alex Forstrom and John Forstrom's motion to dismiss (Docket #24) be and the same is hereby **GRANTED** insofar as the Court declines to exercise supplemental jurisdiction over the claims pending against them;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to compel discovery responses (Docket #32) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge